**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Carlos Cortez Diaz,

      Petitioner

v.

Todd Blanche, et al.,

      Respondents

Case No.: 2:26-cv-01056-JAD-NJK

**Order Granting Habeas Petition, Denying as Moot Motion for Temporary Restraining Order, and Closing Case**

[ECF Nos. 13, 14]

Petitioner Carlos Cortez Diaz is a Cuban national who arrived in the United States in 1980 and was ordered removed in 1981. He was placed in immigration custody from 1985–87, but he was ultimately released on an order of supervision after Immigration and Customs Enforcement[1] (ICE) agents were unable to secure his removal. On March 27, 2026, Cortez Diaz was taken back into ICE custody and has been detained primarily at the Nevada Southern Detention Center ever since.

In April 2026, Cortez Diaz filed a pro se petition for a writ of habeas corpus seeking his release from custody. The court appointed counsel, who filed a first amended habeas petition and a motion for a temporary restraining order (TRO) seeking Cortez Diaz's immediate release. Cortez Diaz argues that ICE has detained him for too long without showing that he is likely to be removed in the reasonably foreseeable future, that the government violated its own regulations when it re-detained him without following established procedures for revoking his order of supervision, and that ICE's policy of removing noncitizens to a third country without adequate notice or a hearing violates his due-process rights. The respondents could not get Cortez Diaz's

---

[1] ICE has had different institutional names throughout the years. To simplify matters, I refer to the agency with the power and authority to remove noncitizens as ICE even if it may have been called something else when Cortez Diaz was ordered removed.

immigration records, despite several extensions of time to do so, and filed a response that does not address the merits of the petition or the TRO motion.

I grant Cortez Diaz's habeas petition. Cortez Diaz was detained for three years under his removal order before being detained again this year. He has shown that there is no good reason to believe that his removal is forthcoming, and the government has conceded that it has zero competent evidence suggesting otherwise. Indeed, the government's response indicates that ICE lost his hard-copy immigration records and appears unable to determine whether anyone is working on his removal at all. Cortez Diaz has also demonstrated that ICE's third-country-removal policy violates the Fifth Amendment's due-process clause.

So I order Cortez Diaz's release, subject to reasonable conditions of supervision. I also prohibit the respondents from re-detaining Cortez Diaz absent a demonstrable change in circumstances in ICE's ability to remove him. And I prohibit the respondents from removing Cortez Diaz to an alternative third country without first providing adequate notice and a meaningful opportunity to seek any available relief for that removal. Finally, because resolving the petition affords Cortez Diaz the relief he seeks, I deny as moot his motion for a temporary restraining order.

**Background**

Carlos Cortez Diaz was born in Cuba and came to the United States in 1980.[2] He was issued a removal order in 1981.[3] Cortez Diaz was later arrested and detained in ICE custody for

---

[2] ECF No. 13 at 5. The government has been unable to locate Cortez Diaz's immigration records, and the Department of Homeland Security's Automated Case Information system does not have a digital record of his immigration proceedings. The first amended petition relies solely on Cortez Diaz's representations to his counsel.

[3] Id.

approximately three years, between 1985 and 1987.[4]  He was transferred to various ICE detention centers during those years, but he was ultimately released on an order of supervision.[5] Cortez Diaz has lived in Las Vegas since his release.[6]  He was arrested and taken back into ICE custody on March 27, 2026, and was detained at the Nevada Southern Detention Center.[7]

Cortez Diaz filed a habeas petition seeking release from custody on April 6, 2026.[8]  On April 8, 2026, I appointed the Federal Public Defender's Office (FPD) to represent him and prohibited the government from transferring Cortez Diaz out of this district while his petition was pending.[9]  Less than month later, the FPD informed the court that Cortez Diaz had been transferred to California five days after my order prohibiting transfer was entered.[10]  I ordered Cortez Diaz returned to the district and, on May 1, 2026, the government complied.[11]

Cortez Diaz filed his counseled amended petition and a TRO motion on May 8, 2026.[12] He seeks release from custody under the Supreme Court's decision in *Zadvydas v. Davis*,[13] which sets limits on the prolonged detention of noncitizens who are subject to final removal orders.  He also contends that he was arrested by ICE without being notified that his supervision was revoked, violating agency regulations.  And he contends that he is likely to be removed to a

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] ECF No. 1.

[9] ECF No. 3.

[10] *See* ECF No. 9.

[11] ECF Nos. 10, 12.

[12] ECF Nos. 13, 14.

[13] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

3

country not listed on his removal order, and the government's policies to effectuate those removals violate the Fifth Amendment's due-process clause.

I ordered the government to file a response to Cortez Diaz's petition and motion, and I required that it attach various immigration records to support its arguments.[14] The government sought three extensions of time to file that response, representing that most of Cortez Diaz's immigration documents are exclusively in hard-copy format due to the fact that he was ordered removed way back in 1981.[15] In the last extension motion, the government explained that Cortez Diaz's records were transmitted to California when he was transferred there in violation of this court's order, but the documents never made it back to Nevada when he was returned to this district.[16] The government represented that it had asked the California facility to scan the documents and email them, but that hadn't yet happened.

I granted those motions and ultimately gave the government extensions totaling 24 days. But after the last extension, I informed the government that no further extensions would be permitted.[17] The government filed a response by that extended deadline explaining that Cortez Diaz's immigration documents "were misplaced in transit and are currently missing."[18] So its response did not address the merits of any of the claims in Cortez Diaz's petition, acknowledging that the government has "no choice but to respectfully defer to this [c]ourt's determination as to [Cortez Diaz's] request for release . . . ."[19]

---

[14] ECF No. 15.

[15] ECF Nos. 17, 19, 22.

[16] ECF No. 22.

[17] ECF No. 24.

[18] ECF No. 25.

[19] *Id.* at 2.

**Discussion**

**A.    This court has jurisdiction over Cortez Diaz's claims.**

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[20]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under United States immigration laws.[21]

**B.    Cortez Diaz has shown that he is entitled to relief on his prolonged-detention claim.**

*1.    The government has authority to detain noncitizens after they have been ordered removed.*

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[22]  During that 90-day period, detention is mandatory.[23]  The statute gives the government the ability to detain a noncitizen beyond that 90-day removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or

---

[20] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[21] *Zadvydas*, 533 U.S. at 687; *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[22] 8 U.S.C. § 1231(a)(1)(B).

[23] 8 U.S.C. § 1231(a)(2)(A).

5

reasons of security or foreign policy"[24] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[25] If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[26]

### 2. The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final. But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[27] To avoid those constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[28] It determined that six months of post-removal-period detention is presumptively reasonable.[29] But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[30] If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[31] And as "the period of prior post-removal

---

[24] *Zadvydas*, 533 U.S. at 682.

[25] 8 U.S.C. § 1231(a)(6).

[26] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[27] *Id.* at 690.

[28] *Id.* at 699.

[29] *Id.* at 701.

[30] *Id.*

[31] *Id.*

confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[32]

### 3. *Cortez Diaz has shown good reasons to believe that he will not be removed in the reasonably foreseeable future, and the government has not rebutted that showing with any evidence of likely removal.*

Based on the best record available in this case—Cortez Diaz's memory—Cortez Diaz was detained for approximately three years after his removal order became final in the 1980s.[33] Though he has been detained for only two-and-a-half months since his most recent immigration arrest, I find that the severe length of detention in 1985–87 meets the standard for indefinite detention. So Cortez Diaz bears the initial burden of showing that there are "good reason[s] to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[34] To meet that burden, Cortez Diaz argues that he has been subject to an order of supervision for approximately 39 years and ICE has been unable to effectuate his removal during that time. He also alleges that, since his March 2026 detention, ICE officials have told him that he will be deported to Mexico, but no efforts to effectuate that deportation have been revealed to him and

---

[32] *Id.* (cleaned up).

[33] Several courts have found that prior detention periods must be counted; otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*. *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 703, 722 (W.D. Wash. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals"). I agree with the reasoning of those courts. *Zadvydas* presumed that detention following removal could reasonably last six months. If, as here, the noncitizen has been previously detained under the same removal order, the government cannot simply restart the six-month clock whenever it chooses to re-detain him. So I consider prior detention periods in my analysis.

[34] *Zadvydas*, 533 U.S. at 701.

no official third-country designation has been made.[35]  He also points out that the government has failed to keep an adequate record of his detention and any attempts to remove him.[36]  I find that Cortez Diaz's allegations are sufficient to establish good reason to believe that he is not likely to be removed in the reasonably foreseeable future.

The government does not meet its shifted evidentiary burden to show that Cortez Diaz's removal is foreseeable.  Indeed, it doesn't engage in the *Zadvydas* analysis at all.  It acknowledges that ICE has misplaced or lost Cortez Diaz's immigration file and thus cannot respond to the merits of his *Zadvydas* claim.[37]  Although the age of Cortez Diaz's case might explain ICE's inability to find his removal order, it does not excuse the government's inability to justify its current efforts to remove him.  Its failure to file any substantive response indicates that there is no substantial likelihood of his removal in the reasonably foreseeable future.  So I grant Cortez Diaz's habeas petition on this basis and order his immediate release.

**D.      Cortez Diaz has shown that the government's third-country-removal procedures violate due process.**

> *1.      The government's policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.*

Once it has been determined that a noncitizen is to be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to.  The first choice is a country "to which the [noncitizen] wants to be removed."[38]  If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen

---

[35] ECF No. 13 at 6, 16.

[36] ECF No. 26 at 3–4.

[37] ECF No. 25.

[38] 8 U.S.C. § 1231(b)(2)(A).

entered the United States, the noncitizen's last country of residence, the country in which the noncitizen was born, and others.[39]  If all of those enumerated country options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept" him.[40]  Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

There is one statutory restriction on third-party removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[41]  And the United Nations Convention Against Torture (CAT), ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country in which they are likely to be persecuted or tortured.  Normally, a noncitizen raises CAT protections at or directly following his initial removal proceedings.  It appears that no immigration statute or regulation addresses how a noncitizen may raise CAT challenges after ICE determines that deportation to the country on his removal order is impracticable and instead chooses to pursue a third-country removal.

In early 2025, ICE tried to fill that statutory gap.  It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those assurances are deemed "credible" by the Department of State, ICE need not give any notice or

---

[39] 8 U.S.C. §§ 1231(b)(2)(E)(i–vi).

[40] 8 U.S.C. § 1231(b)(2)(E)(vii).

[41] 8 U.S.C. § 1231(b)(3)(A).

9

opportunity to be heard to noncitizens who are being removed to that country.[42]  In all other cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended country of removal.[43]  ICE "will generally wait at least 24 hours following service of the notice of removal before effectuating removal," but the policy allows removal on a mere six hours' notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[44]

After the notice of removal is served, the ICE officer "will <u>not</u> affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[45]  If (through an unidentified process) USCIS determines that the noncitizen has not shown that he "would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[46]  If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT for the country of removal.[47]

---

[42] ECF No. 13-3.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

2. ***ICE's third-country policy violates due process, so any attempt to remove Cortez Diaz to a third country must be preceded by notice and a meaningful opportunity to be heard.***

Cortez Diaz contends that ICE's third-country-removal policy does not provide adequate notice or an opportunity to be heard, thus violating the Fifth Amendment's due-process clause.[48] "The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[49] The "fundamental features of due process" are notice and an opportunity to be heard.[50]

The Ninth Circuit has not expressly ruled on what process is due to noncitizens faced with third-country removal. But it has come close. In *Andriasian v. INS*, the Ninth Circuit panel held that immigration officials could not add a new country to the petitioner's removal order without proper notice.[51] It explained that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."[52] And in the unpublished case of *Najjar v. Lynch*, another Ninth Circuit panel cited *Andriasian* for the proposition that, "[i]n the context of country-of-

---

[48] ECF No. 13 at 19–20.  Cortez Diaz also challenges the policy under the Administrative Procedure Act (APA).  In that claim, he essentially argues that the government violated the APA by using a procedure that violates due process. *See id.* at 20.  Because Cortez Diaz's due-process claim on its own justifies release, I do not separately consider whether the government has violated the APA.

[49] *Zadvydas*, 533 U.S. at 693 (cleaned up).

[50] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[51] *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

[52] *Id.*

11

removal designations, last minute orders of removal to a country may violate due process if a[] [noncitizen] was not provided an opportunity to address his fear of persecution in that country."[53]

District courts have extrapolated these holdings to find that adequate due process requires ICE to (1) provide notice, (2) "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response," (3) "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts" if the answer to that question is yes, and (4) provide "adequate time to prepare and file a motion to reopen[.]"[54]  Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[55]  District courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[56]

It is abundantly clear that the first third-country-removal option—immediate deportation without notice so long as the accepting country gives generalized assurances that it will not torture anyone—doesn't provide adequate due process to a noncitizen who may be removed to that country.  Notice, let alone an opportunity to be heard, is not available to a noncitizen in that

---

[53] *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (unpublished) (cleaned up).

[54] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen*, 796 F. Supp. 3d at 727.

[55] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Kumar v. Wamsley*, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025) (finding that this due-process requirement "flows directly from Ninth Circuit precedent" requiring notice of a noncitizen's right to apply for asylum or withholding of removal to a previously undisclosed country).

[56] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law . . . . It would be impossible to comply both with Ninth Circuit precedent and this policy."); *Vu v. Noem*, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. Feb. 25, 2026).

situation.  And ICE's second scheme doesn't fare much better.  Though the policy requires notice, it may be given in as little as six hours before the noncitizen's removal, and that notice explicitly does not advise the noncitizen that he may seek withholding, deferral, asylum, or other protections if he fears removal to that third country.  Even if the noncitizen knows to affirmatively state a fear of removal, the policy does not afford him a hearing of any kind unless a USCIS officer determines, through an unexplained process, that the noncitizen would be likely to prove that any of those protections applies.  So this process does not comport with the fundamental requirements of due process.

I also find that Cortez Diaz is likely to face a due-process violation from this policy.  The government appeared interested in removing Cortez Diaz to a third country (Mexico) once, and there's no indication that his removal to Cuba is likely or reasonably foreseeable.  I thus grant Cortez Diaz's petition with respect to his third-country-removal claims and prohibit the federal respondents from rearresting Cortez Diaz with the intention of removing him to a third country unless they comply with the notice-and-hearing requirements established above.

## Conclusion

IT IS THEREFORE ORDERED that petitioner Carlos Cortez Diaz's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 13] is GRANTED**.  Petitioner **Carlos Cortez Diaz must be released from detention within three days, subject to reasonable supervision conditions.**[57]

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

---

[57] I do not consider Cortez Diaz's argument that his prior supervision order should be reinstated because it appears that the government has misplaced or lost the hard copy of that order.  The government may use the normal means at its disposal to craft appropriate supervision conditions to accompany Cortez Diaz's release.

(1) notice of the date, time, and location of Cortez Diaz's release at least 24 hours before the release is set to occur, and

(2) within four days of this order, notice that Cortez Diaz's release was effectuated.

IT IS FURTHER ORDERED that **the federal respondents are enjoined from re-detaining Carlos Cortez Diaz absent proof of changed circumstances making his removal reasonably foreseeable.**

IT IS FURTHER ORDERED that the **federal respondents are enjoined from removing Carlos Cortez Diaz to any country not listed on his removal order unless it first complies with the notice-and-hearing requirements detailed in this order**.

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

IT IS FURTHER ORDERED that Cortez Diaz's motion for a temporary restraining order **[ECF No. 14] is DENIED** as moot.

The Clerk of Court is directed to SEND a copy of this order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada, and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
June 17, 2026